**Philip L. Fraietta (NJ Attorney ID. 118322014)**
**BURSOR & FISHER, P.A.**
50 Main Street, Suite 475,
White Plains, New York 10606
Telephone: 914-874-0708 | Email: pfraietta@bursor.com
*Local Counsel for Plaintiff and Proposed Class*

**Thiago M. Coelho (CA Bar No. 324715)**
*Pro Hac Vice Application Forthcoming*
**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, California 90017
Telephone: (213) 381-9988 | Facsimile: (213) 381-9989
thiagocoelhosteam@wilshirelawfirm.com
*Proposed Pro Hac Vice Counsel for Plaintiff and Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RUBEN FLORES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendant. | Civil Action No.: ___________________<br><br>CLASS ACTION |

**CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

1. Plaintiff Ruben Flores, whose address is 224 E Avenue 39, Los Angeles, California 90031, brings this action individually and on behalf of all others similarly situated against Samsung Electronics America, Inc., whose principal place of business is 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. Plaintiff alleges the following based on personal knowledge as to himself and his own acts and experiences, and upon information and belief as to all other matters, based on the investigation of counsel.

**NATURE OF THE ACTION**

2. This case is about televisions that Samsung sells as "**Mini LED**" televisions. Samsung named its 2026 M70H, M80H, and M90H Series televisions (the "M Series") "Mini LED" televisions. Samsung put "Mini LED" in the product name, printed "Mini LED" across the screen in its product photos, and told shoppers that "many tiny LEDs" inside the television deliver "3X brighter highlights," "2X deeper blacks," "Mini LED precision," "exceptional brightness and contrast," and "Supreme Mini LED Dimming."[1][2] But the M Series televisions are not Mini LED televisions. They do not contain Mini LED technology, and they cannot deliver the picture quality that Samsung advertises.

3. "Mini LED" has a settled meaning. Samsung itself defines it as "an advanced backlighting display technology that uses tiny LEDs, smaller than standard ones, for more precise backlight control through local dimming zones—a technique where backlight zones are controlled independently."[3] That is how the television industry uses the term: Hisense, Sony, and LG all use

[1] Best Buy, Samsung 85-inch Class M70H Series Mini LED television (2026), Model UN85M70HAFXZA, SKU 6671516, product description and specifications, https://www.bestbuy.com/product/samsung-85-class-m70h-series-mini-led-4k-uhd-samsungvision-ai-smart-tizen-tv-2026/JJGRF3QGSC (last visited Sept. 10, 2026).
[2] Samsung, 65 Inch Class Mini LED M70H 4K | Samsung TV | (2026), Model UN65M70HAFXZA, product page, Overview, https://www.samsung.com/us/tvs/mini-led-tv/65-inch-mini-led-4k-tv-m70h-sku-un65m70hafxza/ (last visited Sept. 17, 2026).
[3] Samsung, Mini LED vs. QLED: What's the Difference?, U.S. TV Buying Guide, https://www.samsung.com/us/tvs/tv-buying-guide/mini-led-vs-qled/ (last visited Sept. 11, 2026).

"Mini LED" to describe a backlight made of hundreds or thousands of tiny LEDs divided into independently controlled zones.[4] It is how technology reviewers and independent testing laboratories define it.[5] It is how retailers sell it, as a step up from a standard LED television. And it is what consumers understand it to mean: a physically better backlight that can brighten one part of the screen while keeping another part dark, producing brighter highlights, deeper blacks, and stronger contrast. Samsung even shows shoppers a picture of the difference: a single, large standard LED next to a cluster of tiny Mini LEDs.

4. The M Series televisions are not Mini LED televisions. They do not have the hardware that makes a television Mini LED. Upon information and belief, they have an ordinary LED backlight: the same LEDs, in roughly the same number and the same two-strip layout, as in Samsung's entry-level Crystal UHD television, which Samsung does not call Mini LED. Their LEDs are not smaller than standard LEDs, there are not more of them, and they are not divided into independently controlled zones.

5. Because they lack that hardware, the M Series televisions cannot do what Mini LED does. RTINGS, an independent testing laboratory, bought and tested the M70H and the M80H. It found that neither television has local dimming. In plain terms, the backlight cannot make one area of the screen bright while keeping another area dark.

6. And because they cannot do what Mini LED does, the M Series televisions do not deliver the picture Samsung promised. Independent testing found limited contrast and brightness in the M70H, and washed-out dark scenes, low contrast, disappointing peak brightness, and dull

---

[4] Hisense, 65-inch Class U6 Series MiniLED ULED 4K Fire TV, Model 65U65QF, "MiniLED," https://www.hisense-usa.com/product-page/televisions-65-class-u6-series-miniled-uled-4k-fire-tv-65u65qf; Sony, BRAVIA 5 65-inch Class Mini LED 4K HDR Google TV (2025), Model K-65XR50, "About This Item," https://electronics.sony.com/tv-video/televisions/all-tvs/p/k65xr50; LG, QNED TV—Ultra Large Screen (2021), "The Finest View in LG LCD TVs," https://www.lg.com/levant_en/qned-tvs/2021/large-screen (last visited Sept. 17, 2026).

[5] See Michael Desjardin, Buying a TV in 2026? These Are the 9 Terms You Need to Know, Tom's Guide (updated Jan. 21, 2026), https://www.tomsguide.com/tvs/here-are-all-of-the-tv-terms-you-need-to-know-when-buying-a-tv-in-2026-from-micro-rgb-to-qd-oled; Consumer Reports, Why Your Next TV May Have Mini LEDs, https://www.consumerreports.org/electronics-computers/tvs/why-your-next-tv-may-have-mini-leds-a7407663850/ (last visited Sept. 15, 2026).

HDR highlights in the M80H. Those results are the opposite of the "brighter highlights," "deeper blacks," and "precision dimming" that Samsung says Mini LED provides.

7. Samsung knows the difference. In large, bold type, Samsung calls the M Series televisions "**Mini LED**" televisions and advertises "**Supreme Mini LED Dimming**" and "**Precision dimming for improved contrast**." Only in tiny print at the bottom of one advertisement does Samsung admit that this "dimming" is "Software-based (not full-array hardware-based)." That admission confirms the problem. Local dimming is a hardware function: it requires separately wired groups of LEDs and the control circuitry to brighten some groups while darkening others. Software can only operate the hardware that is actually inside the television. On a television with a single, undivided backlight, software can adjust the picture signal or turn the entire backlight up and down together, but it cannot make one part of the screen bright while another part stays dark, because there are no separate lighting zones for it to control. Calling that software "Mini LED Dimming" does not give the television Mini LED hardware, and the fine print does not cure Samsung's headline claim that the television is a Mini LED television.

8. Whether a television has Mini LED hardware, and whether it can brighten one part of the screen while darkening another, are facts that can be checked by inspection and testing. Samsung has the specifications and engineering records that show what the M Series televisions contain and what they can do. Consumers do not. The backlight is sealed inside the television, so consumers must rely on Samsung to describe it truthfully.

9. Plaintiff Ruben Flores was comparing televisions at Best Buy when a sales associate steered him to the M70H. The associate told him that the M70H's Mini LED technology gave it the best picture quality, dimming, and technology available at that price. Plaintiff saw the Mini LED name and the related picture-quality claims, relied on Samsung's advertising and the associate's explanation of it, and chose the M70H because he believed he was buying a Mini LED television.

10. The Mini LED representation mattered to Plaintiff. Had Samsung told the truth—that the M70H is not a Mini LED television, has no local dimming, and cannot brighten and darken

separate parts of the screen—Plaintiff would not have bought it at the price he paid. He paid for a technology the television does not have and received a television worth less than Samsung represented.

11. Samsung put the same Mini LED name on every M Series television and repeated the same claims about dimming, brightness, black levels, and contrast through its nationwide retail network. Class members paid more for televisions that lack the technology they were promised. Plaintiff brings this action on behalf of purchasers throughout the United States to recover that loss.

**PARTIES**

12. Plaintiff Ruben Flores is a natural person domiciled in Los Angeles, California, and a citizen of California. He purchased his television for personal, family, or household use.

13. Defendant Samsung Electronics America, Inc. ("Samsung") is incorporated in New York. As of the filing of this Complaint, Samsung's headquarters and principal place of business, where its officers direct, control, and coordinate its activities, is 700 Sylvan Avenue, Englewood Cliffs, New Jersey. Samsung's U.S. headquarters has been located in New Jersey at all times relevant to this Complaint, including when Samsung designed, named, launched, and marketed the M Series televisions and when Plaintiff purchased his television. Samsung markets, distributes, warrants, and sells Samsung televisions throughout the United States, directly and through retailers such as Best Buy.[6]

14. In June 2026, Samsung announced that it intends to relocate its U.S. headquarters from Englewood Cliffs to Plano, Texas, and has stated publicly that it expects to complete that move by the end of 2026, with a group of employees remaining in New Jersey. Upon information and belief, as of the filing of this Complaint that relocation is not complete, Samsung continues to

---

[6] Samsung Electronics America, Inc., Florida Division of Corporations, corporate record (New York incorporation; principal address at 700 Sylvan Avenue, Englewood Cliffs, New Jersey), https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?aggregateId=forp-f95000004153-8d48dd43-fbd9-41a3-a927-f3ca31fb958f; Samsung, Connected Experience Center—New Jersey, https://www.samsung.com/us/connected-experience-center/locations/new-jersey/ (last visited Sept. 10, 2026).

identify Englewood Cliffs as its headquarters and principal place of business, and Samsung's officers continue to direct, control, and coordinate its activities from New Jersey.[7]

15. Upon information and belief, Samsung decides, from its New Jersey headquarters, how its televisions are named, described, marketed, and distributed in the United States. At all times relevant to this Complaint, Samsung's U.S. product management, marketing, brand, e-commerce (samsung.com/us), and retail-channel teams responsible for the M Series were based at its Englewood Cliffs headquarters. The decision to name the M Series "Mini LED," the content of Samsung's U.S. product pages and buying guides described in this Complaint, the wording and placement of the "software-based" disclaimer, and the product names, specifications, images, and feature claims that Samsung supplies to Best Buy and other retailers originated from or were approved at Samsung's New Jersey headquarters.

## JURISDICTION AND VENUE

16. This Court has subject-matter jurisdiction under the Class Action Fairness Act. The proposed Class has at least 100 members; Plaintiff is a citizen of a State different from Samsung's States of citizenship; and, upon information and belief, the total amount in controversy exceeds $5,000,000, exclusive of interest and costs.[8]

17. The amount in controversy reflects the sale of three television series through a nationwide retail network, the price premium and lost value caused by the Mini LED representations, and the damages, restitution, and other monetary relief sought.

18. This Court has personal jurisdiction over Samsung because Samsung's principal place of business is in this District. Samsung is at home here.

19. Independently, this Court has specific personal jurisdiction over Samsung because Plaintiff's and the Class's claims arise out of and relate to conduct that Samsung purposefully

---

[7] See, e.g., Samsung Electronics Announces It Will Move from Englewood Cliffs to Texas, ROI-NJ (June 2, 2026), https://www.roi-nj.com/2026/06/02/tech/samsung-electronics-announces-it-will-move-from-englewood-cliffs-to-texas/ (reporting Samsung's statement that it plans to complete the move by the end of 2026 and that a group of staff will remain in New Jersey); Samsung, Connected Experience Center—New Jersey, supra note 6.

[8] 28 U.S.C. § 1332(d)(2), (5)(B), (6).

carried out in New Jersey. From its New Jersey headquarters, Samsung decided to name the M Series televisions "Mini LED," created and approved the product descriptions, advertising, and disclaimer challenged in this Complaint, and distributed that content nationwide through samsung.com and to Best Buy and other retailers. The misrepresentations at issue were made from New Jersey, and the injuries alleged flow directly from them.

20. Venue is proper in this District because Samsung resides here. Independently, venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District. Upon information and belief, the decision to name the M Series "Mini LED," the creation and approval of the product descriptions, advertising, and disclaimer challenged in this Complaint, and the distribution of that content to Samsung's national retail network were all carried out from Samsung's Englewood Cliffs headquarters in 2025 and 2026. Upon information and belief, many of the current and former Samsung employees with knowledge of those decisions reside in or near this District, and Samsung's records concerning the M Series televisions' design, components, specifications, marketing, and sales were created and maintained here.[9]

## FACTUAL ALLEGATIONS

### A. Samsung Sells the M Series televisions as "Mini LED" Televisions

21. The M Series televisions are Samsung's 2026 M70H, M80H, and M90H series televisions, in all screen sizes, sold in the United States as Mini LED televisions.

22. "Mini LED" is the first thing Samsung tells shoppers about these televisions. It appears in the product name, on Samsung's own website, in Samsung's specifications and advertising, in retailer listings, and in retail sales presentations. Because "Mini LED" is part of the name, every shopper who compares, selects, or buys one of these televisions sees it.

23. Samsung's own website sells the M70H as the "65 Inch Class Mini LED M70H 4K | Samsung TV | (2026)" and the M80H as the "65 Inch Class Mini LED M80H 4K | Samsung

[9] 28 U.S.C. § 1391(b)(1)–(2), (c)(2).

Vision AI Smart TV | (2026).” In the main product image for each, the words “Mini LED” appear in large white letters across the screen. Figures 1 and 2 reproduce those pages.[10][11]




Figure 1. Samsung.com product page for the 65-inch M70H, showing “Mini LED” in the product name and across the screen.

[11] Samsung, 65 Inch Class Mini LED M80H 4K | Samsung Vision AI Smart TV | (2026), Model UN65M80HAFXZA, product page, Overview, https://www.samsung.com/us/tvs/mini-led-tv/65-inch-mini-led-4k-tv-m80h-sku-un65m80hafxza/ (last visited Sept. 17, 2026).




Figure 2. Samsung.com product page for the 65-inch M80H, showing "Mini LED" in the product name and across the screen.

24. Samsung's website then tells shoppers what is inside the television. Under the headline "Crisp, bright and smooth 4K picture, enhanced by AI," Samsung states: "Many tiny LEDs precisely work together to display brighter visuals with richer contrast." Figure 3 reproduces that statement.[12]




Figure 3. Samsung.com M70H product page: "Many tiny LEDs precisely work together to display brighter visuals with richer contrast."

25. Samsung's "Key Features at a glance" section lists "Mini LED" as one of the television's four key features and illustrates it with a side-by-side graphic labeled "LED Backlighting" and "Mini LED Backlighting." The graphic shows a single, large standard LED on one side and a cluster of tiny LEDs on the other. Samsung is telling shoppers that this television

[12] Samsung M70H product page, supra note 2, "Crisp, bright and smooth 4K picture, enhanced by AI." Figure 3 reproduces the statement as displayed on Samsung's website.

has the Mini LED hardware on the right, not the standard LED on the left. Figures 4 and 5 reproduce that section and an enlargement of the backlighting graphic.[13]




Figure 4. Samsung.com M70H product page, "Key Features at a glance," listing "Mini LED" as a key feature.




Figure 5. Enlargement of Samsung's "LED Backlighting" versus "Mini LED Backlighting" graphic from Figure 4.

26. Samsung's message has spread beyond Samsung's own website. A Google product comparison for the M70H Series, the kind of search result a shopper sees when comparing televisions, lists the "Backlight Tech" of Samsung's 2026 Crystal UHD televisions as "Standard LED (edge-lit)" and the "Backlight Tech" of the "Samsung Mini LED (M70H Series)" as "Mini

---

[13] Samsung M70H product page, supra note 2, "Key Features at a glance." Figure 4 reproduces the complete section; Figure 5 reproduces Samsung's "LED Backlighting" and "Mini LED Backlighting" graphic at larger scale.

LED backlight." Because Samsung named the television "Mini LED," even third-party comparison tools tell shoppers that the M70H has a Mini LED backlight. Figure 6 reproduces that comparison.[14]

**Feature Comparison**

| Feature | Samsung Crystal UHD (2026) | Samsung Mini LED (M70H Series) |
|---|---|---|
| **Backlight Tech** | Standard LED (edge-lit) | Mini LED backlight |

Figure 6. Google product comparison listing the M70H Series' "Backlight Tech" as "Mini LED backlight."

27. Plaintiff's Best Buy purchase record identifies his television as a Samsung 85-inch Class M70H Series Mini LED 4K UHD SamsungVision AI Smart Tizen TV (2026), model UN85M70HAFXZA, SKU 6671516. "Mini LED" is part of the product name, alongside Samsung's other descriptions of its display technology.

28. The Best Buy page for Plaintiff's model repeats Samsung's message. It promises "3X brighter highlights and 2X deeper blacks" than standard 4K televisions, says "Pure Spectrum Color" combines an advanced color layer with "Mini LED precision," claims "Mini LED HDR" delivers "exceptional brightness and contrast," and says "Supreme Mini LED Dimming" reveals detail in dark shadows and bright highlights.[15]

29. The listing names the televisions Samsung is comparing against. The "3X brighter" and "2X deeper" claims are compared with Samsung's 2025 Q7F. The "Mini LED HDR" claim is compared with Samsung's 2025 U8000F. By naming specific earlier televisions, Samsung tells shoppers that Mini LED is a measurable upgrade over them.[16]

30. Upon information and belief, Samsung wrote, approved, or supplied these product descriptions for Best Buy and other retailers, including the online and in-store product information

[14] Google, "Feature Comparison," Samsung Crystal UHD (2026) vs. Samsung Mini LED (M70H Series), search result for [SEARCH QUERY], https://www.google.com/search?q=[QUERY] (last visited Sept. 17, 2026). Figure 6 reproduces the "Backlight Tech" row of the comparison.

[15] Best Buy product description and specifications, supra note 1.

[16] Best Buy, Samsung 85-inch M70H, Model UN85M70HAFXZA, SKU 6671516, Features and Disclaimers 1–2, https://www.bestbuy.com/product/samsung-85-class-m70h-series-mini-led-4k-uhd-samsungvision-ai-smart-tizen-tv-2026/JJGRF3QGSC (last visited Sept. 11, 2026).

that retail employees use. The descriptions concern Samsung-branded technology inside Samsung's own products—information that only Samsung has and that Samsung distributes to retailers nationwide from its New Jersey headquarters.

31. Upon information and belief, Best Buy sales associates rely on Samsung's product descriptions, feature claims, and in-store product information, along with the ordinary industry meaning of Mini LED, when they recommend and sell the M Series televisions. They sell the M Series televisions as Mini LED televisions that deliver the better picture quality associated with Mini LED.

32. Samsung's own U.S. buying guide says the same thing. It explains that Mini LED provides higher peak brightness, deeper blacks, and better image control; that it lights specific zones as needed; and that it improves black levels through local dimming, in which independent backlight zones minimize light leakage and increase contrast.[17]

33. In short, Samsung uses "Mini LED" to describe the physical backlight inside the television, and it attributes the picture-quality benefits—brighter highlights, deeper blacks, better contrast, and more precise control—to that hardware: smaller, more numerous LEDs operating in independently controlled zones. By Samsung's own account, those benefits come from Mini LED hardware, not from software running on an ordinary backlight.

**B. What Mini LED Means and Why It Matters**

34. A standard LED television is an LCD television lit from behind by a "backlight" made of ordinary LEDs. The LCD screen does not produce its own light; it shapes light that comes from behind it or from its edges. How the backlight is built therefore determines how brightly and how precisely the television can show the light and dark parts of a picture.

35. Televisions sold today are commonly labeled by their display technology: LED, Mini LED, QLED, and OLED. Shoppers see these labels in product names and on store shelves

---

[17] Samsung, Mini LED vs. OLED: What's the Difference?, U.S. TV Buying Guide, sections on brightness, black expression, and contrast, https://www.samsung.com/us/tvs/tv-buying-guide/mini-led-vs-oled/ (last visited Sept. 10, 2026).

and use them to compare televisions. The labels describe different things. "LED" describes a standard LED backlight. "Mini LED" describes a backlight made of much smaller and more numerous LEDs. "QLED" describes a quantum-dot color layer, which can be paired with either a standard LED or a Mini LED backlight. "OLED" describes a screen whose pixels make their own light and needs no backlight at all. Samsung's buying guides explain these differences and describe its Neo QLED televisions as combining quantum-dot color with a Mini LED backlight.[18]

36. A standard LED television uses fewer, larger LEDs than a Mini LED television. The LEDs may sit along the edge of the screen and spread light through a guide, or they may sit in rows behind the screen. In a basic design, the whole backlight brightens or dims together. Some standard full-array televisions divide their larger LEDs into local dimming zones, but because the LEDs are large, only a limited number of zones fit behind the screen, and the television cannot precisely separate neighboring bright and dark areas.

37. Full-array local dimming solves that problem. It spreads LEDs across the entire back of the screen and divides them into zones that can be controlled separately. The television can brighten the zones behind a highlight while dimming the zones behind the dark parts of the same picture.[19]

38. Mini LEDs are much smaller than standard backlight LEDs. As Consumer Reports explains, their small size lets manufacturers fit far more LEDs behind the screen and divide them into more local dimming zones. The point is simple engineering, not marketing: smaller lights and more separately controlled zones allow more precise lighting.[20]

---

[18] Samsung, Mini LED vs. QLED: What's the Difference?, What Is Mini LED? and What Is QLED?, https://www.samsung.com/us/tvs/tv-buying-guide/mini-led-vs-qled/; Samsung, Mini LED vs. OLED: What's the Difference?, What Is OLED?, https://www.samsung.com/us/tvs/tv-buying-guide/mini-led-vs-oled/ (last visited Sept. 11, 2026).

[19] Adam Babcock, Our TV Picture Quality Tests: Lighting Zone Precision and Transitions, RTINGS.com (updated May 20, 2026), https://www.rtings.com/tv/tests/picture-quality/lighting-zones.

39. The LEDs do not work alone. They are mounted on a board or strips, wired to control circuits, and run by a control chip that can address the lights individually or by zone. The small LEDs let more lights fit behind the screen; the circuits and control chip let different groups brighten or dim separately. Together, these physical parts are the "Mini LED hardware" referred to in this Complaint.

40. Local dimming requires hardware that can control different groups of LEDs separately. Software can calculate how bright each part of the picture should be, but driver circuits must then deliver different amounts of power to the matching LED zones. If a television does not have separately controlled circuits and zones, software cannot create them. Technical documentation for multi-zone LED drivers shows this hardware: separate current-control channels and brightness settings for different groups of LEDs.[21]

41. Technology publications illustrate the difference with a scene of tiny stars or a bright spaceship against the blackness of space. A television with local dimming can light the areas behind the stars or the spaceship while keeping the surrounding areas dark. A television without local dimming cannot; light from the bright objects bleeds into the dark background and washes out the contrast.[22]

42. Samsung defines Mini LED the same way. Its U.S. guide calls Mini LED an advanced backlighting technology that uses tiny LEDs, smaller than standard ones, for more precise control through local dimming zones, "where backlight zones are controlled independently."[23]

---

[21] Texas Instruments, TLC696x2/4/8-Q1 16-Channel, 2/4/8 Time-Multiplexing, Automotive Local Dimming Backlight LED Driver, SNVSCK7 (June 2023), at 1, Features, Description, and Simplified Schematic, https://www.ti.com/lit/gpn/TLC69604-Q1. See the separate current-control channels and brightness memory documented in this engineering example.

[22] Parker Hall & Ryan Waniata, *How to Choose the Right TV in 2026*, WIRED (Feb. 12, 2026), https://www.wired.com/story/how-to-buy-the-right-tv/ (explaining that local dimming permits LEDs to brighten or darken smaller sections of the screen, improving contrast and reducing light bleed around bright images on dark backgrounds).

43. Samsung goes on to explain that more LEDs can fit in a smaller area, giving precise screen control, superior brightness, deeper blacks, and more detail in dark and bright scenes. Samsung tells consumers that Mini LED's advantage over standard QLED is that it controls local dimming zones more precisely.[24]

44. Other television makers use "Mini LED" the same way, which confirms its ordinary meaning in the industry. Hisense, Sony, and LG use "Mini LED" to describe physical backlight technology: smaller, more numerous LEDs and the hardware that controls them. Each of those companies describes its AI processors and software picture processing as separate features. Their advertising draws the same line this Complaint draws: the hardware that makes a television Mini LED is different from software that adjusts the picture.[25]

45. The words themselves are factual. "Mini" describes the size of the light source. "LED" identifies the component. "Dimming" describes how the lights are controlled. "3X" and "2X" are numbers. Each can be measured, and Samsung presents them together as reasons to buy. They are statements of fact about the product, not puffery.

**C. The M Series televisions Are Not Mini LED Televisions**

46. Upon information and belief, the M Series televisions do not contain the dense, separately controlled backlight that Samsung describes and sells as Mini LED. They cannot independently control the light behind different parts of the picture. In substance, they are standard LED televisions sold under a Mini LED name.

47. Upon information and belief, the M70H uses the same backlight as Samsung's entry-level Crystal UHD television, which Samsung does not call Mini LED. Both televisions use

---

[24] *Id.*, definition of Mini LED.

two rows of standard-size LEDs mounted on strips across the back of the panel, not an array of smaller LEDs divided into independently controlled zones.[26]

48. Upon information and belief, the M70H's LEDs are not smaller than the Crystal UHD's LEDs, and there are not more of them. The M70H's LEDs measure about 0.5 millimeters, the size of a standard backlight LED, compared with the 0.1 to 0.3 millimeters that the industry understands as Mini LED. The M70H's LEDs are also no brighter than the Crystal UHD's. In other words, Samsung's "Mini LED" television has fewer, equally large, and no brighter LEDs than the standard LED television that Samsung does not call Mini LED.

49. Upon information and belief, the M70H's construction also explains why it has no local dimming. The M70H uses the same processor as the Crystal UHD, has no LED control chip or control circuitry capable of controlling individual LEDs or zones, and wires its LEDs in series so that all of them brighten and dim together as a single group.

50. These construction facts are consistent with RTINGS' independent finding, described below, that the M70H and M80H have no local dimming.

51. The lack of local dimming can also be seen without opening the television. RTINGS bought and tested the M70H and found that it has no local dimming feature at all. Its tests showed that the television raises the black level across the whole picture instead of dimming the light behind the dark parts of a scene.[27]

52. That is a finding about what the television can do, not a matter of taste. A backlight either can or cannot make different regions different brightnesses at the same time. The M70H cannot.

---

[26] Plaintiff's allegations regarding the internal construction of the M70H are based in part on publicly available teardown analysis and photographs comparing the Samsung U800F Crystal UHD and the Samsung M70H, including each television's rear housing, power and control boards, reflector films, LED strips, LEDs, and processor.
[27] Samuel Breton, Adam Babcock & Yannick Khong, Samsung M70H Review, RTINGS.com (June 18, 2026; updated July 31, 2026), Black Level and Lighting Zone Transitions, https://www.rtings.com/tv/reviews/samsung/m70h.

53. RTINGS tested the 65-inch M70H and states that its results apply to the other M70H sizes, including the 85-inch model Plaintiff bought. Upon information and belief, the lack of local dimming is part of the M70H's design across all sizes, not a defect in one review unit.[28]

54. RTINGS also found that the M70H performed almost the same as Samsung's entry-level U8000F television, which Samsung does not call Mini LED. Neither television has local dimming, and both showed limited contrast and brightness in RTINGS' standardized tests. Samsung nevertheless sells the M70H as a Mini LED television.

55. RTINGS separately bought and tested the M80H and found the same thing: no local dimming. It reported washed-out dark scenes, low contrast, disappointing peak brightness, and an HDR picture in which bright details looked dull rather than distinct.[29]

56. Upon information and belief, the lack of local dimming is part of the M80H's design across all screen sizes, not a defect in the tested unit.

57. Software cannot make up the difference. Software can analyze a picture, change the video signal sent to the LCD layer, or turn the entire backlight up or down. It cannot create separately controlled lighting zones. Calling software "Supreme Mini LED Dimming" does not let one part of a single, undivided backlight brighten while another part darkens.

58. Samsung sells Mini LED as a backlight system that provides precise, localized light control and produces brighter highlights, deeper blacks, and stronger contrast. Independent testing shows that the M70H and M80H do not have the local dimming that Samsung uses to define Mini LED. Upon information and belief, they also lack the zone-control hardware needed to provide it. And by any measure, LEDs that are the same size as, and fewer in number than, the LEDs in Samsung's own standard LED television are not "mini."

59. Upon information and belief, the same design runs across the M70H, M80H, and M90H, which Samsung markets together as one M Series Mini LED line.

---

[28] *Id.*, Differences Between Sizes and Variants (stating that the tested 65-inch unit's results apply to the 43-, 55-, 75-, and 85-inch M70H variants).

[29] RTINGS.com, Samsung M80H Review (published June 3, 2026), Home Theater, Brightness, Black Level, and Lighting Zone Transitions, https://www.rtings.com/tv/reviews/samsung/m80h.

**D. Samsung Charges More for Real Mini LED and Buried the Difference in Fine Print**

60. Samsung's advertising makes the Mini LED promise big and the disclaimer small. Figure 7 reproduces the complete dimming graphic from Best Buy's listing for the 85-inch M70H that Plaintiff bought. Beneath a vivid photograph of a tiger, Samsung displays "Supreme Mini LED Dimming" in large, bold type and promises "Precision dimming for improved contrast" in a second large headline. The disclaimer appears only in a single tiny line at the bottom.[30]




Figure 7. Complete dimming advertisement from Best Buy's 85-inch M70H product gallery.

61. That tiny line reads: "Supreme Mini LED Dimming is Software-based (not full-array hardware-based) technology." Its small, light lettering is dwarfed by the Mini LED headline

[30] Best Buy, Samsung 85-inch M70H, Model UN85M70HAFXZA, SKU 6671516, product-gallery dimming advertisement, https://www.bestbuy.com/product/samsung-85-class-m70h-series-mini-led-4k-uhd-samsungvision-ai-smart-tizen-tv-2026/JJGRF3QGSC (last visited Sept. 15, 2026). Figure 7 reproduces the complete advertisement, scaled proportionally.

and the contrast promise above it. At normal viewing size, it is barely legible and easy to miss. Samsung promotes the technology in a headline and hides the fact that the television does not have it in fine print.

62. Samsung sells televisions that actually have Mini LED technology, and it charges accordingly. Samsung's Neo QLED line, including the 85-inch QN80H, has a full-array Mini LED backlight with independently controlled local dimming zones. Best Buy lists the QN80H's backlight type as full-array local dimming, and Samsung's feature graphic identifies a "Quantum Mini LED Full Array." As of September 18, 2026, Best Buy sells the 85-inch QN80H for $3,299.99 and the 85-inch M70H for $999.99. Samsung prices its Neo QLED televisions far higher because the Mini LED hardware inside them costs more to build and delivers a better picture. The M Series televisions carry the same Mini LED name at a lower price, which tells shoppers they are getting Mini LED technology at a bargain, not that they are getting a standard LED television. Samsung's fine-print admission that the M Series' dimming is "software-based (not full-array hardware-based)" confirms that Samsung knows the difference between the two and chose to put the Mini LED name on a television that has only one of them.[31]

**E. Independent Testing Confirms That the M Series televisions Lack Mini LED Performance**

63. RTINGS.com ("RTINGS") is an independent product-testing and review website with a laboratory in Montreal, Canada. It buys the televisions it reviews from retailers rather than accepting units selected by manufacturers. Its staff test products under standardized procedures and publish both the methods and the results so consumers can compare televisions on the same

[31] Best Buy, Samsung 85-inch QN80H Series Neo QLED Mini LED television (2026), SKU 6671359, Specifications and product-gallery feature graphic, https://www.bestbuy.com/product/samsung-85-class-qn80h-series-neo-qled-mini-led-4k-uhd-samsungvision-ai-smart-tizen-tv-2026/JJGRF3QXZV (last visited Sept. 18, 2026) (listing price of $3,299.99); Best Buy, Samsung 85-inch M70H, supra note 1 (last visited Sept. 18, 2026) (listing price of $999.99); M70H dimming advertisement reproduced in Figure 7.

basis. Its television reviews include tests of brightness, contrast, black levels, and local dimming performance. The findings below come from that hands-on testing.[32]

64. RTINGS tests lighting-zone precision and transitions in a dark room using the television's calibrated picture mode. It displays a still scene to examine the light around subtitles and bright objects, then films shapes moving slowly and quickly across the screen. This shows how the backlight follows moving highlights and whether light spills into dark areas.[33]

65. RTINGS separately records whether a television has local dimming, what type of backlight it uses, and an estimated zone count. Those are recorded product characteristics, separate from RTINGS' subjective scores for how well a dimming system performs. "No local dimming" is a finding about what the product can do, not a reviewer's opinion about how the picture looks.[34]

66. First, RTINGS bought and tested a 65-inch M70H and reported that it has no local dimming feature. The television cannot adjust individual backlight zones to brighten highlights without affecting the rest of the picture. RTINGS states that its results also apply to the 85-inch size Plaintiff bought. Its review explains that, without local dimming, blacks are raised across the whole picture. A uniformly washed-out screen cannot deliver the deeper blacks that separately dimmed dark areas produce.[35]

67. Second, RTINGS bought and tested a 65-inch M80H and reached the same conclusion. It reported no local dimming, poor contrast, disappointing peak brightness, washed-out dark scenes, and a dim, flat HDR picture. Based on those results, RTINGS called Samsung's use of the Mini LED label for the M80H highly misleading.[36]

---

[32] RTINGS.com, About Us, https://www.rtings.com/company/about-us (last visited Sept. 11, 2026); Samsung M70H Review, testing categories, https://www.rtings.com/tv/reviews/samsung/m70h.
[33] Babcock, Lighting Zone Precision and Transitions, Our Tests, Lighting Zone Precision, and Lighting Zone Transitions, https://www.rtings.com/tv/tests/picture-quality/lighting-zones (updated May 20, 2026).
[34] *Id.*, Lighting Zone Transitions, explanation distinguishing reference characteristics from subjective scores.
[35] Samuel Breton, Adam Babcock & Yannick Khong, Samsung M70H Review, RTINGS.com (June 18, 2026; updated July 31, 2026), Differences Between Sizes and Variants, and Lighting Zone Transitions, https://www.rtings.com/tv/reviews/samsung/m70h.
[36] RTINGS.com, Samsung M80H Review (published June 3, 2026), Introduction, Home Theater, Brightness, Black Level, and Lighting Zone Transitions, https://www.rtings.com/tv/reviews/samsung/m80h.

68. Third, TechRadar compared the M80H side by side with Samsung's QN80H, a Samsung television that actually has Mini LED local dimming. The M80H's peak HDR brightness measured 252 nits in Movie mode and 259 nits in Filmmaker Mode. The QN80H measured 1,152 and 1,149 nits. The reviewer also observed clouding and lost shadow detail on the M80H.[37]

69. RTINGS identifies the same processor, Samsung's NQ4 AI Gen2 Processor, in both the M80H and the QN80H. Yet the QN80H has local dimming and the M80H does not. The processor is not what makes a television Mini LED. The television still needs separately controlled lights and the circuitry to run them.[38]

70. This testing shows a concrete gap between what Samsung advertised and what the M Series televisions do. RTINGS found no local dimming in the M70H or the M80H, and side-by-side testing documented the M80H's limited brightness and contrast. Those findings concern the backlight's capabilities and the picture it produces—exactly what Samsung uses "Mini LED" to promise.

**F. Consumers Understand Mini LED to Mean Better Backlighting, and They Feel Misled**

71. Reasonable consumers understand "Mini LED" to mean an improved system of lights inside the television. They expect smaller LEDs and more precise control of the light behind different parts of the screen, with the better contrast and darker blacks that manufacturers associate with that technology. A consumer does not need to know how wide an LED is, or how many dimming zones a television has, to understand that "Mini LED" promises a physical improvement over an ordinary LED backlight.

---

[37] James Davidson, Looking to Buy a New Samsung Mini-LED TV for the World Cup? I Tested Two Side by Side—and It's an Opportune Time to Pick Up 2025's Flagship Set with Prime Day Coming Up, TechRadar (June 5, 2026), https://www.techradar.com/televisions/looking-to-buy-a-new-samsung-mini-led-tv-for-the-world-cup-i-tested-two-side-by-side-and-its-an-opportune-time-to-pick-up-2025s-flagship-set-with-prime-day-coming-up; Justin Gosselin, Adam Babcock & Yannick Khong, Samsung QN80H TV Review, RTINGS.com (May 12, 2026; updated Aug. 20, 2026), Home Theater and Lighting Zone Transitions, https://www.rtings.com/tv/reviews/samsung/qn80h.

[38] RTINGS.com, Samsung M80H Review, Introduction and Lighting Zone Transitions, https://www.rtings.com/tv/reviews/samsung/m80h; Justin Gosselin, Adam Babcock & Yannick Khong, Samsung QN80H Review (May 12, 2026; updated Aug. 20, 2026), Introduction and Black Level, https://www.rtings.com/tv/reviews/samsung/qn80h. See each review's processor designation and description of its tested backlight function.

72. Samsung teaches consumers to make that connection. Its buying guide explains the relationship between smaller LEDs, independent dimming zones, and better picture quality, and recommends Mini LED to shoppers who want brighter pictures, deeper blacks, and stronger HDR. Samsung's own product pages show a standard LED next to a cluster of Mini LEDs and tell shoppers that the television's "many tiny LEDs" produce "brighter visuals with richer contrast." By explaining the category this way, Samsung gives consumers a concrete reason to choose a television with "Mini LED" in its name.[39]

73. The product name carries that message to the moment of purchase. Samsung pairs "Mini LED" with claims about dimming, precision, contrast, and darker blacks. Together, those claims tell shoppers that the television has the backlight hardware responsible for those improvements. A lower price may lead a shopper to see the television as a good value within the Mini LED category; it does not tell the shopper that the television has no Mini LED backlight at all.

74. The fine-print disclaimer does not explain that in terms an ordinary shopper would understand. A shopper who notices the words "software-based" could reasonably take them to describe how Samsung runs or enhances its Mini LED system. The surrounding advertisement continues to promise "Supreme Mini LED Dimming" and "Precision dimming for improved contrast." It does not plainly say that the television has no separately controlled backlight zones and cannot brighten and dim different areas of the screen. And the tiny print does nothing to correct the much larger Mini LED message shown in Figures 1 through 7.

75. Consumers have said publicly that Samsung's message created exactly this expectation and that they felt misled. One prospective M80H buyer understood Mini LED to mean better backlight control, more precise dimming zones, and stronger HDR. After learning from

[39] Samsung, Mini LED vs. QLED: What's the Difference?, What Is Mini LED?, Mini LED vs. QLED: Which TV Should You Choose?, and FAQs 7–8, https://www.samsung.com/us/tvs/tv-buying-guide/mini-led-vs-qled/ (last visited Sept. 11, 2026).

RTINGS that the M80H has no local dimming, the consumer asked why Samsung used the Mini LED label at all and decided to look at other brands.[40]

76. Another participant in the same discussion likewise understood Mini LED to mean a real technological upgrade. Learning that the M80H has no local dimming led that consumer to view the label as marketing rather than a real improvement and to drop the M80H in favor of competing televisions.[41]

77. An M70H buyer reported purchasing the television because the Mini LED advertising led the buyer to expect better contrast, deeper blacks, and a noticeable HDR improvement. After using it, the buyer saw gray-looking dark scenes, unimpressive highlights, and a picture that looked like the ordinary LED television it replaced. The buyer tied those disappointments to Samsung's "Mini LED Dimming" and improved-contrast claims.[42]

78. In a follow-up, that buyer explained that the television's low price did not create an expectation of flagship performance, but the Mini LED name did create an expectation of a noticeable technological improvement. Another M70H owner similarly reported choosing the television because of the Mini LED description and later learning that its picture did not match the local dimming performance the owner associated with Mini LED.[43]

---

[40] Dear_Individual4891, Did Samsung Just Make a Fake MiniLED TV with the M80H?, r/AskTechnology, Reddit, https://www.reddit.com/r/AskTechnology/comments/1tyawaa/did_samsung_just_make_a_fake_miniled_tv_with_the/ (last visited Sept. 11, 2026).

[41] Icy_Net5151, comment in Did Samsung Just Make a Fake MiniLED TV with the M80H?, r/AskTechnology, Reddit, https://www.reddit.com/r/AskTechnology/comments/1tyawaa/did_samsung_just_make_a_fake_miniled_tv_with_the/ (last visited Sept. 11, 2026).

[42] Firm-Inspector-3298, Bought a Samsung 55M70H for "Mini LED" TV… but I Don't See Any Difference, r/4kTV, Reddit, original post, https://www.reddit.com/r/4kTV/comments/1sj32oi/bought_a_samsung_55m70h_for_mini_led_tv_but_i/ (last visited Sept. 11, 2026).

[43] Firm-Inspector-3298, original post and reply to Snoopzster in Bought a Samsung 55M70H for "Mini LED" TV… but I Don't See Any Difference, r/4kTV, Reddit, https://www.reddit.com/r/4kTV/comments/1sj32oi/bought_a_samsung_55m70h_for_mini_led_tv_but_i/; nautica2509, comment in Bought a Samsung 55M70H for "Mini LED" TV… but I Don't See Any Difference, r/hometheater, Reddit, https://www.reddit.com/r/hometheater/comments/1sj34lg/bought_a_samsung_55m70h_for_mini_led_tv_but_i/; Best Buy, Customer Ratings & Reviews, Samsung 50-inch M70H, SKU 6671588, https://www.bestbuy.com/product/samsung-50-class-m70h-series-mini-led-4k-uhd-samsungvision-ai-smart-tizen-tv-2026/JJGRF3QG9G/sku/6671588/reviews (last visited Sept. 15, 2026).

79. Retailer reviews show the same message at work at the point of sale. Best Buy's M70H review page summarizes customer attention to picture quality and Mini LED technology, and a verified buyer reported that a store associate recommended the television based on the buyer's stated needs. These reviews do not prove what is inside the television; they show that the Mini LED name and its promised picture benefits reach consumers through the retail channel and matter to the purchase decision.

**G. Samsung Knew the Truth and Profited from Concealing It**

80. Samsung is a sophisticated television manufacturer with expert knowledge of display design, LED sizes, backlight design, control circuitry, local dimming systems, image processing, and performance testing. Before it sold a single M Series television, Samsung knew exactly what components were inside and what those components could do. Upon information and belief, Samsung knew that the M Series used the same LEDs, LED layout, processor, and circuitry as its Crystal UHD televisions, which Samsung has never called Mini LED.

81. Samsung's own guides show that Samsung understands Mini LED to mean smaller-than-standard LEDs used for precise backlight control through independently operated local dimming zones. Samsung's own product pages show shoppers a picture of that hardware. Yet Samsung placed its contrary "software-based, not full-array hardware-based" disclaimer in tiny print beneath the much larger dimming and contrast promises shown in Figure 7. Samsung knew the difference and presented it in a way consumers were unlikely to notice.

82. Samsung nevertheless put "Mini LED" in the product name and paired it with "Supreme Mini LED Dimming," "Mini LED HDR," "Mini LED precision," "many tiny LEDs," and claims of brighter highlights, deeper blacks, and superior color. Upon information and belief, Samsung chose and approved that coordinated message to make the M Series televisions appear to have Mini LED backlights that they do not have.

83. Samsung had a financial reason to do so. Mini LED is a recognized step up from ordinary LED televisions, and it draws consumer interest and a higher price. By putting the Mini

LED name on what is, inside, its entry-level Crystal UHD television, Samsung could attract shoppers looking for premium picture quality at a lower price and win sales it would not have won by accurately describing the televisions as standard LED televisions.

84. Consumers could not discover the truth at the point of sale. The backlight is sealed inside the television; the LED size, count, wiring, and controller cannot be seen; and an attractive demonstration image does not reveal whether the hardware can dim separate zones. Samsung had exclusive or superior knowledge of each of these hidden facts and had a duty to disclose them when it described the products as Mini LED televisions.

### H. Plaintiff Relied on the Mini LED Name and Lost Money

85. On September 3, 2026, Plaintiff bought an 85-inch Samsung M70H television from Best Buy for delivery to his Los Angeles home. The model number is UN85M70HAFXZA and the Best Buy SKU is 6671516.

86. Before buying, Plaintiff was comparing televisions and looking for the best picture quality and technology he could get at his price point. A Best Buy sales associate steered him to the M70H and assured him that its Mini LED technology gave it the best picture quality, dimming, and technology available at that price. Plaintiff also saw "Mini LED" in the M70H's product name. He relied on Samsung's Mini LED advertising and on the associate's explanation that the advertised technology would give him the better picture and dimming performance he wanted.

87. Samsung uses "Mini LED" as a consumer-facing technology category and pairs it with claims of superior brightness, black levels, contrast, detail, color, and dimming. The associate delivered the same practical message at the point of sale: the M70H's Mini LED technology was why it offered the better picture and technology for the price. Plaintiff relied on that message. He did not need to know the size of a diode or the design of a control board to do so.

88. The Mini LED representation was material to Plaintiff's purchase decision. It was the stated technological reason for the associate's recommendation and for Plaintiff's understanding that the M70H offered the best picture quality, dimming, and technology at its price.

Plaintiff relied on Samsung's advertising and the associate's explanation of it when he chose the M70H and decided it was worth the price. He paid $999.99 for the television; the purchase record separately lists $103.50 in sales tax, fees, and surcharges, for a total item charge of $1,103.49.

89. When he bought the television, Plaintiff did not know that independent testing would find no local dimming in the M70H, or that Samsung's fine print described its dimming as software-based and not full-array hardware-based. Nothing in the product name, the prominent claims, or the sales presentation told him that the television's backlight could not brighten and darken different areas independently.

90. Had Samsung accurately described the television's backlight and what it could do, Plaintiff would not have bought it at the price he paid. He would have paid less or chosen a different television.

91. Plaintiff lost money on the purchase. He paid a price that included the value of the Mini LED technology Samsung represented, but he received a television without that technology. His loss includes the price premium and the difference between the television's value as represented and its value as delivered.

92. Samsung's uniform marketing caused the same kind of loss to other buyers. The Mini LED name increased demand and supported higher prices across Samsung's nationwide retail network. Class members paid those prices for televisions that lack the technology they were promised.

## CLASS ACTION ALLEGATIONS

93. Plaintiff brings this action individually and on behalf of the following Nationwide Class and California Subclass under Rule 23:

> **<u>Nationwide Class</u>:** All persons in the United States who purchased a new Samsung M70H, M80H, or M90H Series television January 1, 2026 to the present.

**California Subclass**: All persons who purchased in California a new Samsung M70H, M80H, or M90H Series television from January 1, 2026 to the present.

94. Excluded from the Nationwide Class and the California Subclass are Samsung; its parents, subsidiaries, and affiliates; its officers, directors, and employees; persons who purchased for resale; persons who obtained a full refund of the purchase price; the judicial officers assigned to this action and members of their immediate families and staff; and persons who timely and validly request exclusion. Plaintiff reserves the right to amend the class definitions as discovery and further investigation warrant.

95. The Nationwide Class and California Subclass can be identified using objective criteria: the model purchased, where it was purchased, and who purchased it. Samsung's serial-number, shipment, warranty, and retailer records, together with receipts and other proof of purchase, can identify members and their transactions.

96. The Nationwide Class and California Subclass are so numerous that joining every member in one lawsuit is impracticable. Upon information and belief, thousands of buyers, including many in California, are spread across the country. Samsung sells the three series through national retail channels in multiple screen sizes.

97. Common questions include whether the M Series televisions have the smaller, more numerous backlight LEDs, the independently controlled local dimming zones, and the localized light control that Samsung's Mini LED descriptions convey; what "Mini LED" and Samsung's related claims mean to reasonable consumers; and whether those representations are false or misleading.

98. Additional common questions include whether the undisclosed lack of local dimming is material; what Samsung knew about the products' design and capabilities; whether Samsung intended consumers to rely on its descriptions; whether those descriptions created express warranties; whether Samsung violated the California Consumers Legal Remedies Act,

False Advertising Law, and Unfair Competition Law; whether Samsung was unjustly enriched; and whether Samsung's conduct caused a measurable price premium or loss of value.

99. Plaintiff's claims are typical of the claims of the Nationwide Class and California Subclass. He bought an M Series television in California that carried the Mini LED name, relied on that name, and paid for a product that lacks the represented technology. His claims arise from the same standardized product naming and course of conduct, and seek relief for the same economic injury, as the claims of other members.

100. Plaintiff will fairly and adequately protect the interests of the Nationwide Class and California Subclass. His interests align with theirs because he seeks relief for the same marketing and the same economic injury. Plaintiff has retained counsel experienced in consumer class actions and complex litigation.

101. Common questions predominate over individual ones. The M Series televisions' design, Samsung's uniform product names and benefit claims, Samsung's knowledge, materiality, and the effect of the representations on price can all be proved with common evidence. Screen size, purchase price, purchase date, and place of purchase can be addressed through transaction records and a damages methodology tied to the alleged premium.

102. A class action is superior to individual actions. The cost of litigating the televisions' internal design, Samsung's marketing decisions, and the resulting price premium would exceed the individual losses of most buyers. Deciding those questions once, in one action, promotes consistent results and allows members to obtain meaningful relief.

103. Samsung has acted and continues to act on grounds that apply generally to the California Subclass by uniformly marketing the M Series televisions as Mini LED televisions. Final injunctive relief addressing those representations is appropriate for the California Subclass as a whole.

104. Plaintiff seeks certification of the Nationwide Class and California Subclass and, as appropriate, certification of particular common issues. Common evidence can establish

Samsung's conduct and the products' characteristics, with any necessary model or screen-size grouping addressed in the certification and trial plan.

## FIRST CAUSE OF ACTION

### Fraudulent Misrepresentation and Concealment

*(On Behalf of Plaintiff and the Nationwide Class)*

105. Plaintiff incorporates the allegations in paragraphs 1 through 106.

106. Samsung represented that the M Series televisions were Mini LED televisions—that they contained and provided the advanced backlighting conveyed by the Mini LED name and by the related claims of "Mini LED precision," "Mini LED HDR," "Supreme Mini LED Dimming," "many tiny LEDs," brighter highlights, deeper blacks, exceptional contrast, detail, and color. Samsung made these representations through the products' names, its own website and product pages, specifications, and retailer descriptions before and during the 2026 sales period, including before Plaintiff's September 3, 2026 purchase at Best Buy.

107. The specific representations, their sources, and their content are identified in Sections A and D above and reproduced in Figures 1 through 7. Samsung, acting through its U.S. product, marketing, and e-commerce personnel, made them continuously from the M Series televisions' introduction in 2026 through the filing of this Complaint, on samsung.com, in the product names printed on the televisions' packaging and retail listings, and in the Best Buy listing for the model Plaintiff bought. The facts Samsung failed to disclose—that the M Series televisions have a standard LED backlight, no local dimming, and no zone-control hardware—are facts about Samsung's own products that were within Samsung's exclusive knowledge.

108. Those representations were false and misleading. The M Series televisions are not Mini LED televisions. Independent testing found no local dimming in the M70H or the M80H. Upon information and belief, the M Series televisions lack the dense, separately controlled backlight that Samsung's Mini LED message conveys and cannot provide the localized light control Samsung used to explain and sell the technology.

109. Samsung had a duty to disclose that the M Series televisions lack Mini LED hardware and local dimming, because Samsung had exclusive or superior knowledge of the sealed televisions' internal design and because Samsung's affirmative descriptions were misleading without that information. By failing to disclose that the advertised dimming was software-based, not full-array hardware-based, and did not allow different areas of the backlight to brighten and darken independently, Samsung concealed facts material to consumers' purchasing decisions.

110. Samsung knew its representations were false or misleading, or acted with reckless disregard for their truth. Samsung designed or specified the backlights, knew whether the televisions had local dimming and separately controlled lighting zones, defined Mini LED by those very features in its own buying guides, and relegated its software-based, non-full-array disclaimer to tiny print overshadowed by its prominent Mini LED dimming and contrast claims.

111. Samsung intended consumers to rely on its descriptions. It put Mini LED in the product name, repeated the term throughout its feature lists, added numerical and comparative benefit claims, and supplied the coordinated message to national retailers to induce purchases and obtain revenue and a price premium.

112. Plaintiff actually and reasonably relied on Samsung's Mini LED advertising and related picture-quality claims, as reinforced by the sales associate's explanation, before he bought. The associate told him that the M70H's Mini LED technology was why it offered the best picture quality, dimming, and technology at that price. Those representations were material to Plaintiff's decision. Had Samsung disclosed that the M70H is not a Mini LED television, has no local dimming, and cannot control separate backlight areas independently, Plaintiff would have paid less or chosen a different television.

113. The material Mini LED representation was made uniformly to Class members in the name of every M Series television. The concealed construction facts would have affected reasonable buyers' decisions and the prices they were willing to pay.

114. As a direct and proximate result, Plaintiff and Class members paid more for the M Series televisions than they otherwise would have and received products worth less than

represented. They seek compensatory damages and, to the extent permitted by applicable law, punitive damages for Samsung's knowing and intentional conduct.

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation

*(On Behalf of Plaintiff and the Nationwide Class)*

115. Plaintiff incorporates the allegations in paragraphs 1 through 106.

116. Samsung supplied descriptions of the M Series televisions in the course of its business, for use by consumers deciding what to buy. It intended Plaintiff and Class members to rely on those descriptions of the products' existing technology and capabilities.

117. The Mini LED name and the related dimming, brightness, black-level, contrast, detail, and color claims described existing characteristics and capabilities of the goods. Samsung could have confirmed whether those descriptions were accurate from the component specifications, engineering records, and performance testing in its possession.

118. Samsung failed to use reasonable care in preparing and communicating those descriptions. It used Mini LED as the M Series televisions' product category and promised localized light-control benefits even though independently tested M70H and M80H units have no local dimming, and it placed the software-based, non-full-array disclaimer in tiny print beneath much larger Mini LED claims. That presentation failed to communicate that the televisions' backlights cannot brighten and darken different areas independently.

119. Samsung owed the intended recipients of this information a duty to use reasonable care in supplying it. Samsung had superior knowledge of the sealed televisions' internal design and deliberately supplied technical descriptions for consumers to use in making purchasing decisions.

120. Plaintiff and Class members justifiably relied on Samsung's material descriptions in buying the M Series televisions. That reliance caused them to pay more than they would have paid for accurately described products.

121. As a direct and proximate result, Plaintiff and Class members suffered pecuniary loss, including the price premium and the difference between the value of the products as represented and as delivered. They seek damages for those losses.

## THIRD CAUSE OF ACTION

### Breach of Express Warranty

*(On Behalf of Plaintiff and the Nationwide Class)*

122. Plaintiff incorporates the allegations in paragraphs 1 through 106.

123. Samsung is a merchant with respect to televisions, and the M Series televisions are goods. Samsung's Mini LED name and its related claims of "Mini LED precision," "Mini LED HDR," "Supreme Mini LED Dimming," brighter highlights, deeper blacks, exceptional contrast, detail, and color were affirmations of fact and descriptions of the goods. They created express warranties that the televisions would conform to those descriptions under Article 2 of the Uniform Commercial Code as adopted in every State, including California Commercial Code section 2313 and N.J. Stat. Ann. § 12A:2-313.

124. Samsung made these warranties through the products' names, its website and product pages, specifications, advertising, and the descriptions it supplied to authorized retailers. Samsung intended the warranties to reach ultimate purchasers and to induce them to buy the M Series televisions.

125. The Mini LED name became part of Plaintiff's bargain. He saw and relied on it before buying his M70H. The same standardized name formed part of the basis of every Class member's bargain because it appeared in the name of every M Series television. Samsung directed its warranties to consumers through the product name, its website, and the advertising and product information it supplied to retailers, intending that consumers rely on them.

126. Samsung breached its express warranties by supplying televisions that did not conform to its descriptions. The M Series televisions are not Mini LED televisions; they lack the

represented Mini LED components and cannot provide the localized backlight control that Samsung's descriptions conveyed.

127. Before filing this Complaint, Plaintiff, through counsel, sent Samsung written notice of the breach of warranty alleged in this Complaint, on behalf of Plaintiff and all other purchasers of M Series televisions, by certified mail and overnight courier to its Englewood Cliffs headquarters. Samsung also had actual knowledge of the nonconformity before sale because it designed or specified the M Series televisions, selected or approved their components, and knew how they were built and how they performed.

128. As a direct and proximate result of Samsung's breach, Plaintiff and Class members received televisions worth less than warranted and suffered economic loss. They seek damages measured by the difference between the value of the goods as warranted and as delivered, together with other recoverable losses caused by the breach.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment and Restitution

*(On Behalf of Plaintiff and the Nationwide Class)*

129. Plaintiff incorporates the allegations in paragraphs 1 through 106.

130. Plaintiff and Class members conferred a monetary benefit on Samsung by buying the M Series televisions. Samsung received revenue from those purchases, directly through samsung.com and indirectly through its retail distribution network, which purchases the televisions from Samsung and resells them to consumers at prices supported by Samsung's Mini LED marketing. Samsung also received the benefit of the increased demand and price premium generated by that marketing. Samsung knowingly received the benefit of the money Class members paid for its televisions.

131. Samsung knew of and accepted that benefit. It used the Mini LED name and related performance claims precisely to generate those purchases and that revenue.

132. It would be unjust for Samsung to keep that benefit. Samsung induced consumers to pay for Mini LED technology and localized backlight control that the televisions do not have, and it obtained money it would not have obtained had it described the products accurately.

133. Plaintiff pleads unjust enrichment in the alternative to his damages and express-warranty claims. To the extent no enforceable contract governs the benefit Samsung obtained, or no legal remedy fully restores that benefit, Samsung must make restitution.

134. Plaintiff and Class members seek restitution of the money Samsung obtained at their expense through the conduct alleged here, together with other equitable monetary relief available under applicable law.

**FIFTH CAUSE OF ACTION**

**Violation of the California Consumers Legal Remedies Act**

**California Civil Code §§ 1750 et seq.**
*(On Behalf of Plaintiff and the California Subclass)*

135. Plaintiff incorporates the allegations in paragraphs 1 through 106.

136. Plaintiff and members of the California Subclass, who purchased their televisions for personal, family, or household purposes and not for business purposes, are "consumers"; Samsung is a "person"; the M Series televisions are "goods"; and the purchases at issue are "transactions" within the meaning of California Civil Code section 1761.

137. Samsung represented, through the M Series televisions' product names, its website and product pages, retailer materials, and point-of-sale marketing, that the televisions were Mini LED televisions and provided Mini LED precision, localized dimming, brighter highlights, deeper blacks, stronger contrast, and the related picture-quality benefits.

138. Those representations were false and misleading. The M Series televisions are not Mini LED televisions as Samsung itself defines and markets that technology. The M70H and M80H have no local dimming, and, upon information and belief, the M Series televisions lack the

dense, independently controlled backlight hardware needed to provide the localized light control Samsung represented.

139. Samsung thereby represented that the M Series televisions had characteristics, uses, benefits, and qualities they did not have; represented that they were of a particular standard, quality, or grade when they were of another; advertised them with the intent not to sell them as advertised; and represented that they were supplied in accordance with prior representations when they were not, in violation of California Civil Code sections 1770(a)(5), (7), (9), and (16).

140. Samsung intended its representations to result in sales of the M Series televisions. The Mini LED name and related picture-quality claims were material to reasonable consumers and to Plaintiff, who actually and reasonably relied on them in choosing and buying his M70H.

141. As a direct and proximate result, Plaintiff and members of the California Subclass paid more than they otherwise would have paid and received televisions worth less than represented.

142. Upon information and belief, Samsung continues to market and sell the M Series televisions in California under the Mini LED name and with the related picture-quality claims, threatening continuing harm to California consumers.

143. He would consider purchasing a Samsung television advertised as Mini LED in the future if he could trust that the label was accurate, but he cannot presently rely on Samsung's Mini LED representations to determine whether a Samsung television actually contains Mini LED technology. Absent an injunction, Plaintiff and other California consumers face the ongoing risk of being deceived by the same representations.

144. At this time, Plaintiff seeks only injunctive relief under the Consumers Legal Remedies Act pursuant to section 1780(a)(2), including an order prohibiting Samsung from continuing to represent the M Series televisions as Mini LED televisions and requiring appropriate corrective disclosures, together with attorneys' fees and costs under section 1780(e).

## SIXTH CAUSE OF ACTION

### Violation of the California False Advertising Law

### California Business and Professions Code §§ 17500 et seq.

*(On Behalf of Plaintiff and the California Subclass)*

145. Plaintiff incorporates the allegations in paragraphs 1 through 106.

146. California's False Advertising Law prohibits any person from making or disseminating, in connection with the sale of goods, any statement concerning those goods that is untrue or misleading and that is known, or by the exercise of reasonable care should be known, to be untrue or misleading. Cal. Bus. & Prof. Code § 17500.

147. Samsung made and disseminated advertising to California consumers, through the M Series televisions' product names, samsung.com, its buying guides, and the product information it supplied to Best Buy and other California retailers, stating that the M Series televisions are Mini LED televisions and provide Mini LED precision, Mini LED HDR, Supreme Mini LED Dimming, brighter highlights, deeper blacks, and stronger contrast.

148. Those statements were untrue and misleading. The M Series televisions are not Mini LED televisions, have no local dimming, and lack the backlight hardware that Samsung itself identifies as the source of Mini LED's benefits. Samsung's statements were also likely to deceive reasonable consumers, who understand "Mini LED" to describe a physical backlight technology superior to a standard LED backlight.

149. Samsung knew, or by the exercise of reasonable care should have known, that its statements were untrue and misleading. Samsung designed and specified the M Series televisions, defined Mini LED in its own buying guides by reference to the very hardware the M Series televisions lack, and drafted the fine-print disclaimer conceding that the advertised dimming is software-based and not full-array hardware-based.

150. Plaintiff relied on Samsung's Mini LED advertising in purchasing his M70H and lost money as a result: he paid a price that reflected the represented Mini LED technology and

received a television without it. Members of the California Subclass were exposed to the same standardized advertising and lost money in the same way.

151. Plaintiff cannot presently recover damages under the Consumers Legal Remedies Act, and no award of damages would prevent Samsung from continuing to advertise the M Series televisions as Mini LED televisions or compel corrective disclosures. Restitution under the False Advertising Law is also measured and administered differently from legal damages.

152. Pursuant to California Business and Professions Code § 17535, Plaintiff and the California Subclass seek an order enjoining Samsung from continuing to advertise the M Series televisions as Mini LED televisions, requiring corrective disclosures, and awarding restitution of the money Samsung acquired through its false advertising, together with attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

## SEVENTH CAUSE OF ACTION

### Violation of the California Unfair Competition Law

### California Business and Professions Code §§ 17200 et seq.

*(On Behalf of Plaintiff and the California Subclass)*

153. Plaintiff incorporates the allegations in paragraphs 1 through 106.

154. California's Unfair Competition Law prohibits any unlawful, unfair, or fraudulent business act or practice and any unfair, deceptive, untrue, or misleading advertising. Cal. Bus. & Prof. Code § 17200.

155. Samsung's conduct is unlawful because it violates the Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), (7), (9), and (16); the False Advertising Law, Cal. Bus. & Prof. Code § 17500; California's express warranty statute, Cal. Com. Code § 2313; and section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits deceptive acts and practices in commerce, as alleged in this Complaint.

156. Samsung's conduct is fraudulent because naming and marketing standard LED televisions as "Mini LED" televisions, and promising Mini LED precision and dimming that the televisions cannot provide, is likely to deceive reasonable consumers, and did deceive Plaintiff.

157. Samsung's conduct is unfair because it offends established public policy against deceptive labeling of consumer goods, is immoral, unethical, oppressive, and unscrupulous, and causes substantial injury to consumers that is not outweighed by any countervailing benefit to consumers or competition and that consumers could not reasonably have avoided, because the backlight is sealed inside the television and consumers must rely on Samsung's description of it. Samsung's conduct also violates the policies underlying the Consumers Legal Remedies Act and False Advertising Law.

158. Plaintiff relied on Samsung's Mini LED representations and lost money as a result of Samsung's unfair competition. He paid for a Mini LED television and received a standard LED television worth less than he paid. Members of the California Subclass suffered the same injury.

159. Pursuant to California Business and Professions Code § 17203, Plaintiff and the California Subclass seek an order enjoining Samsung from continuing to represent the M Series televisions as Mini LED televisions, requiring corrective disclosures, and awarding restitution of the money Samsung acquired by means of its unfair competition, together with attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Nationwide Class and California Subclass, requests judgment against Samsung as follows:

A. Certifying the Nationwide Class and California Subclass, appointing Plaintiff as representative of each, and appointing his counsel as Class Counsel;

B. Enjoining Samsung, under the Consumers Legal Remedies Act, False Advertising Law, and Unfair Competition Law, from continuing to represent the M Series televisions as Mini

LED televisions and from making the related false and misleading claims, and requiring appropriate corrective disclosures;

C. Awarding compensatory and other recoverable damages on the claims for which damages are sought, in an amount to be proved at trial;

D. Awarding restitution and other equitable monetary relief to the extent available, including under California Business and Professions Code §§ 17203 and 17535;

E. Awarding punitive damages on the fraud claim to the extent permitted by applicable law;

F. Awarding prejudgment and postjudgment interest as permitted by law;

G. Awarding taxable costs and reasonable attorneys' fees to the extent authorized by law, including under California Civil Code § 1780(e) and California Code of Civil Procedure § 1021.5; and

H. Granting such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 21, 2026

**Bursor & Fisher, P.A.**
By: ***/s/ Philip L. Fraietta***
**Philip L. Fraietta**
NJ Attorney ID. 118322014
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: 914-874-0708
Email: pfraietta@bursor.com
*Local Counsel for Plaintiff and Proposed Class*

**WILSHIRE LAW FIRM, PLC**
**Thiago M. Coelho (CA Bar No. 324715)**
*Pro Hac Vice Application Forthcoming*
660 S. Figueroa St., Sky Lobby
Los Angeles, California 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989
thiagocoelhosteam@wilshirelawfirm.com
*Proposed Pro Hac Vice Counsel for Plaintiff and Proposed Class*